[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCT 25, 2006
THOMAS K. KAHN
CLERK

_____

No. 05-17207

_____

Agency No. A95-905-140

OLGA PATRICIA MONTES,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

**(October 25, 2006)**

Before CARNES, MARCUS and KRAVITCH, Circuit Judges.

PER CURIAM:

Olga Patricia Montes, a native and citizen of Colombia, seeks review of a

final order of the Board of Immigration Appeals. The BIA's order affirmed an

Immigration Judge's denial of her application for asylum and withholding of removal under the Immigration and Nationality Act. Because substantial evidence supports the IJ's decision to deny asylum and not to withhold removal, we deny Montes' petition.

I.

Through her asylum application and hearing testimony, Montes relayed an account—which the IJ accepted—of several unnerving encounters with the Armed Revolutionary Forces of Colombia (FARC). These encounters began while she worked as an administrative assistant for the National University Institute for Environmental Studies. There she became involved in a special university road building project, which FARC apparently opposed. In August 2001, while alone on a visit to a construction site, a man claiming to be a FARC member approached Montes and demanded that she induce her University superiors to reroute the road. She refused the man's request, saying that she had no influence over such matters.

FARC was persistent. The next month, again while traveling in connection with work, Montes received a nighttime visit at her hotel room from two unidentified women. The women took Montes to an undisclosed location where they hit her and, using abusive language, again instructed her to get the route changed. Failing to do so, the women warned, would produce consequences. The

2

women, presumably FARC operatives, followed up this episode with a phone call in early October 2001. During the call, they told Montes they were watching her and that she had placed her own safety and security in jeopardy for not complying with the earlier orders to get the new road rerouted. Finally, in mid-October, a letter, allegedly from FARC, was sent to her sons at school. It told Montes' sons that their mother was now a military target because she had rejected the group's demands.

Montes took all of this as a sign that she and her sons needed to leave, and soon. So she and her children came to the United States in early November 2001 as non-immigrant visitors allowed to remain until the next May. Several months after arriving, Montes' concerns grew when she heard that someone had ransacked her abandoned Bogota apartment. In late July 2002, however, Montes received a notice to appear before the IJ, which alleged that she and her sons were subject to removal under the INA for overstaying their visa.

In proceedings before the IJ, Montes conceded that she was subject to removal, but proceeded on her application for asylum under the INA and for withholding of removal under the INA and the Convention Against Torture and Other Cruel, Inhumane or Degrading Treatment or Punishment.[1] In an oral

---

[1] Montes' children were eventually severed from the removal hearing on the basis that the children's father, Montes' common law husband, had received asylum.

decision, the IJ denied all of her application, notwithstanding the fact that he had generally accepted all of Montes' story. The IJ reasoned that FARC's threats and harassment did not amount to persecution under the INA and that it appeared that FARC had not imputed any political opinion to Montes. Unable to meet the lower "well-founded fear" standard for proving asylum, it followed that Montes did not establish the more stringent "clear probability of persecution" standard required to withhold her removal. Finally, because FARC is not a part of the Colombian government, the IJ determined that the provisions of the Convention Against Torture were inapplicable.

The BIA expressly adopted and affirmed the IJ's decision, adding only that it endorsed the IJ's finding that FARC had not targeted Montes on account of any political opinion. Montes' petition for review followed.

## II.

Because the BIA expressly adopted the IJ's decision, that is the decision we review. See Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001). In doing so, we review de novo the BIA's legal conclusions. D-Muhumed v. United States Att'y Gen., 388 F.3d 814, 817 (11th Cir. 2004). By contrast, we review the BIA's factual determinations under the deferential substantial evidence test and will affirm its decision "if it is supported by reasonable, substantial, and probative

4

evidence on the record considered as a whole." Id. at 817–18 (quoting Al Najjar, 257 F.3d at 1283–84) (quotations omitted). "To reverse the IJ's fact findings, we must find that the record not only supports reversal, but compels it." Mendoza v. United States Att'y Gen., 327 F.3d 1283, 1287 (11th Cir. 2003).

The crux of Montes' appeal is that "the Immigration Judge neglected to analyze the case correctly, as [Montes] clearly demonstrated that she was being persecuted due to her imputed political opinion."[2] (Petr.'s Br. 11.) This imputed political opinion, Montes argues, was that of her University employer whose road building projects "involv[ed] political issues." (Id.) We take Montes' argument as a challenge both to the IJ's conclusion that Montes had not been subject to "persecution" within the meaning of the INA and to the IJ's finding that FARC had not imputed any political opinion to her.

These grounds of the IJ's decision are rooted in the INA's definition of the term "refugee," a statutory prerequisite for asylum. 8 U.S.C. § 1158(b)(1)(A). The INA defines a "refugee" as:

---

[2] Montes makes no argument as to her eligibility for relief under the Convention Against Torture and therefore has abandoned the issue. See Huang v. United States Att'y Gen., 429 F.3d 1002, 1007 n.2 (11th Cir. 2005). In her brief, Montes does note that her two children and husband were granted asylum, and that the IJ stated that the "immigration laws are steeped in keeping families together." (Petr.'s Br. 14.) She does not, however, elaborate on this argument. See Flanigan's Enters., Inc. of Ga. v. Fulton County, Ga., 242 F.3d 976, 987 n.16 (11th Cir. 2001) (noting that a party waives an argument when it fails to elaborate on it or cite authority in support of it in its brief).

5

> any person who is outside any country of such person's nationality . . . and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion . . . .

8 U.S.C. § 1101(a)(42)(A).  An applicant for asylum carries the burden of establishing his status as a refugee.  See Al Najjar, 257 F.3d at 1284.  Thus, to be eligible for asylum, the alien must offer specific and credible evidence to establish (1) past persecution on account of a statutorily listed factor, or (2) a "well-founded fear" that the statutorily listed factor will cause future persecution.  8 C.F.R. § 208.13(a), (b).

We agree with the BIA "that the evidence indicates that . . . FARC targeted [Montes] because of her refusal to assist FARC . . . rather than on account of her political opinion, actual or imputed."  The FARC members' comments to Montes revealed an interest in her for purely pragmatic reasons.  Even assuming the University's opinion as to the roadway location constitutes a "political opinion" within the meaning of the INA, there is no evidence that FARC imputed that opinion to Montes.  Instead, the evidence shows that FARC viewed Montes as someone who had the ability to influence the University's plans for the roadway regardless of her own opinion.  See Sanchez v. United States Att'y Gen., 392 F.3d 434, 438 (11th Cir. 2004) (refusal to cooperate with guerilla group was not

6

persecution on the basis of a political opinion).  Rather than compel a finding contrary to that of the IJ, the record supports the IJ's determination that FARC was not harassing Montes on account of her own political opinion, actual or imputed.

Having failed to show past persecution or a "well-founded fear" of persecution on account of any statutorily listed factor, Montes does not qualify as a refugee.  We thus need not address the issue of whether Montes' FARC encounters amount to harassment.  The BIA properly denied her application for asylum.

It likewise follows that the BIA properly denied Montes' request for withholding of removal.  "An applicant for withholding of deportation must show a 'clear probability of persecution,' or that he will more likely than not be persecuted if deported.  If an applicant is unable to meet the 'well-founded fear' standard for asylum, he is generally precluded from qualifying for either asylum or withholding of deportation."  Nkacoang v. INS, 83 F.3d 353, 355 (11th Cir. 1996) (internal citations omitted).  Because Montes was not eligible for asylum, the denial of the withholding of removal was proper as well.

**PETITION DENIED.**